IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| YVETTE SELLERS, | ) | CASE NO.  1:12-CV-228 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 12). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Yvette Sellers' applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, and a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§  416(i) and 423, is supported by substantial evidence and therefore, conclusive.

For the reasons that follow, the undersigned VACATES the decision of the Commissioner and REMANDS the case back to the Social Security Administration.

I.  PROCEDURAL HISTORY

On July 17, 2008, Plaintiff Yvette Sellers ("Plaintiff" or "Sellers") applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits.  (Tr. 93-99).  Plaintiff alleged she became disabled on March 7, 2008, due to suffering from bipolar disorder, diabetes, hypertension, heart problems, knee problems, asthma and blood clots in her lungs and legs. (Tr. 93, 97, 127).  The Social Security Administration denied Sellers' applications for benefits initially and upon reconsideration.  (Tr. 62-68, 74-87).  Thereafter, Plaintiff requested a hearing before an administrative law judge to contest the denial of her

applications. (Tr. 88-89).

On October 29, 2010, Administrative Law Judge C. Howard Prinsloo (the "ALJ") convened a hearing via video to evaluate Plaintiff's applications. (Tr. 30-57). The ALJ presided over the hearing from St. Louis, Missouri, while Plaintiff, counsel and the vocational expert appeared in Cleveland, Ohio. (Tr. 30, 32). During the proceeding, the ALJ heard testimony from Plaintiff and the vocational expert. (Tr. 30-57).

On November 12, 2010, the ALJ issued an unfavorable decision finding Sellers was not disabled. (Tr. 12-23). The ALJ applied the five-step sequential analysis,[1] and concluded Plaintiff retained the ability to perform work which existed in significant numbers in the national economy. (*Id.*). Following the issuance of this decision, Sellers sought review of the ALJ's

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

    (1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

    (2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

    (3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

    (4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

    (5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

decision from the Appeals Council. (Tr. 8). However, the council denied Plaintiff's request, thereby making the ALJ's ruling the final decision of the Commissioner. (Tr. 1-6). Sellers now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. PERSONAL BACKGROUND INFORMATION

Sellers was born on July 7, 1961, and was 49 years of age on the date of her hearing before the ALJ. (Tr. 36, 60). Accordingly, at all relevant times, Sellers was considered as a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(c); 416.963(c). Plaintiff graduated from high school and has past relevant experience working as a food service worker and nurse's aide. (Tr. 132, 54).

## III. ALJ's RULING

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.

2. The claimant has not engaged in substantial gainful activity since March 7, 2008, the alleged onset date.

3. The claimant has the following severe impairments: bipolar disorder, diabetes mellitus, degenerative joint disease, a history of diagnoses and/or treatment for chronic abdominal pain, and deep vein thrombosis on Coumadin therapy.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant lacks the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) and must work in occupations that can be learned in a short period of time of no more than 30 days with an SVP level of 1 or 2. She is limited to routine, repetitive tasks with no changes in the routine work setting or

3

      more than occasional interaction with the public and/or co-workers.  She is further limited to work that is not performed at a production rate pace.

6.      The claimant is unable to perform any past relevant work.

. . .

10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.      The claimant has not been under a disability, as defined in the Social Security Act, from March 7, 2008, through the date of this decision.

(Tr. 14-23) (internal citations omitted).

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

(6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

Plaintiff attacks the ALJ's decision on two grounds. First, Sellers maintains the ALJ failed to properly weigh the medical opinions issued by her treating physicians. Plaintiff's second assignment of error challenges the ALJ's reliance upon the vocational expert's testimony at step five of the sequential analysis. Plaintiff's first assignment of error is well-taken.

Sellers maintains the ALJ failed to explain why he discarded the opinions of four of her treating physicians:  Drs. Diandepura, Ryan, Kline and Gardway. It is well-established that an ALJ must give special attention to the findings of a claimant's treating source. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§

5

404.1527(c)(2); 416.927(c)(2). The treating source rule indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not entitled to controlling weight under this framework, the ALJ must determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). These factors include: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the opinion; the physician's specialization; and any other relevant factors. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii) & (c)(3)-(c)(6); 416.927(c)(2)(i)-(ii) & (c)(3)-(c)(6).

The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the opinion. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). The reasons-giving requirement serves a two-fold purpose. First, it "let[s] claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Secondly, the requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id*. An ALJ's failure to adhere to these regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id*. (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)) (emphasis omitted).

Nevertheless, the failure to provide good reasons may be deemed "harmless error" when (1) the "treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulations."[2]  *Id.* (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)).

### a.  Dr. Gardway

In April 2009, Plaintiff's treating psychiatrist, Dr. Gretchen Gardway,[3] completed a Medical Source Statement form evaluating Sellers' mental capacity.  (Tr. 593-94).  In it, Dr. Gardway opined Plaintiff retained a "fair" ability to: follow work rules; maintain regular attendance and be punctual within customary tolerance; function independently without special supervision; understand, remember and carry out simple job instructions; behave in an emotionally stable manner; and leave home on her own depending on where she was going. (*Id.*).  On the other hand, Dr. Gardway concluded Sellers maintained a "poor" ability to: use judgment; maintain attention and concentration for extended periods of two hour segments; respond appropriately to changes in routine settings; deal with the public; relate to co-workers; interact with supervisors; work in coordination with or proximity to others without being unduly distracted or distracting; deal with work stresses; complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; understand, remember and carry out detailed or complex job instructions; socialize; relate predictably in social situations; and manage

---

[2] Effective March 26, 2012, section 404.1527 of the Code of Federal Regulations was amended. Paragraph (d) was redesignated as paragraph (c).  *See* 77 F.R. 10651-01, 2011 WL 7404303.

[3] Plaintiff incorrectly refers to Dr. Gardway as Dr. Gardner.  (*See* Pl.'s Br. at 12).

her funds.  (*Id*.).  Dr. Gardway further commented that Sellers was "severely limited by her mental illness".  (Tr. 594).

In April 2010, Dr. Gardway completed a second Medical Source Statement assessing Sellers' mental faculties.  (Tr. 686-87).  The findings contained in this report largely mirrored the doctor's 2009 report save a few changes.  Dr. Gardway indicated Plaintiff had somewhat improved in that she now had a "fair" ability to understand, remember and carry out both detailed and complex job instructions, and a "good" ability to understand, remember and carry out simple job instructions.  (Tr. 687).  However, the doctor noted Plaintiff's ability to behave in an emotionally stable manner and leave home on her own worsened to a "poor" rating.  (*Id*.).  Dr. Gardway also commented that Sellers had "significant mood liability, panic attacks, paranoia, anxiety, low frustration tolerance, affective instability, [and] hallucinations".  (*Id*.).

The ALJ addressed these two reports completed by Dr. Gardway, but did not give them controlling weight or otherwise indicate how much weight he assigned to the doctor's overall opinion.  This was a clear violation of the treating source doctrine.  Even if the ALJ determined that Dr. Gardway's opinion was not entitled to controlling weight, the ALJ remained under a duty to give "good reasons" for the weight afforded the opinion.

The undersigned is particularly disturbed by the ALJ's description of Dr. Gardway's opinion.  The ALJ highlighted Dr. Gardway's findings which reflected Plaintiff's "fair" or "good" abilities, but made no mention of the numerous "poor" findings contained in the doctor's 2009 report, and only brief mention of the "poor" findings in the 2010 assessment.  (*See* Tr. 20).  Dr. Gardway's opinion was particularly important because all of the other medical opinion evidence regarding Plaintiff's mental health predated her opinion by as many as two years.  (*See* Tr. 239-42, 407-14, 415-17).

8

The ALJ's failure here cannot be deemed harmless error.  Dr. Gardway's opinion was not so patently deficient that it could not be credited.  Nor can it be said that the ALJ's findings were consistent with the doctor's opinion, or that the ALJ met the goal of the treating source doctrine despite failing to follow the strict dictates of the rule.  Ultimately, the ALJ failed to explain how he reconciled Dr. Gardway's opinion with his RFC assessment.

In both her 2009 and 2010 assessments, Dr. Gardway indicated Sellers had a "poor" ability to "complete a normal workday and work week without interruptions from psychologically based symptoms and [to] perform at a consistent pace without an unreasonable number and length of rest periods."  (Tr. 594, 687).  Notably, during the hearing, the ALJ posed a hypothetical question to the vocational expert describing an individual who was "unable to engage in sustained work activity for a full eight hour day on a regular or consistent basis."  (Tr. 56).  In response, the vocational expert testified that there would be no competitive employment available for such a person.  (*Id*.).  Thus, full acceptance of Dr. Gardway's findings would have likely caused the ALJ to conclude that Plaintiff was disabled at step five of the analysis.  Without some explanation from the ALJ, the Court has no way of determining why the ALJ rejected this portion of Dr. Gardway's opinion or whether his decision to do so was supported by substantial evidence.  As a result, remand is necessary.

### b.  Dr. David Ryan

Although remand is proper on other basis, the Court will briefly address the ALJ's evaluation of the other treating physicians' opinions.

On October 16, 2008, Plaintiff presented to Dr. David Ryan for an initial visit.  (Tr. 379).  Dr. Ryan noted Plaintiff's history of abdominal pain and various forms of medication used to treat the pain.  (*Id*.).  The doctor's notes from the visit also indicate that Sellers was limited to

9

standing for 1 hour, sitting for 30 minutes and walking for 15 minutes.  (*Id.*).  Although the ALJ acknowledged other of Dr. Ryan's findings, the ALJ did not explicitly address this finding or indicate how much weight he attributed to the doctor's opinions.  (*See* Tr. 17-18).  Defendant asserts a number of reasons why the ALJ would have been justified in discounting Dr. Ryan's opinion of Plaintiff's ability to stand, sit and walk, but these reasons were not put forward by the ALJ.  On remand, the ALJ will have a second opportunity to assess Dr. Ryan's opinion and supply an adequate explanation of the weight given to the opinion and the reasons for that weight.

### c.  Dr. Allen Kline

On August 13, 2008, Dr. Allen Kline performed an evaluation of Plaintiff's mental faculties. (Tr. 240-42).  Dr. Kline diagnosed Sellers with bipolar disorder, diabetes, hypertension and obesity.  (Tr. 241-42).  In the evaluation, Dr. Kline indicated Plaintiff suffered from poor concentration, frequent mood changes, was hospitalized often and did not take care of herself well.  (Tr. 242).  The doctor also stated that Sellers' diabetes, obesity and hypertension limited her ability to perform any exertional activities.  (*Id.*).  The ALJ discussed this assessment but failed to specify how much weight he gave to these findings.  (Tr. 20).  Again, the Commissioner provided several hypothetical reasons why the ALJ could have dismissed Dr. Kline's opinion – reasons which the Court may have accepted if stated by the ALJ.  However, the ALJ's omission of any such explanation limits the undersigned's ability to evaluate the sufficiency of the ALJ's ruling.  The ALJ can correct this error on remand.

10

d. Dr. Diandepura[4]

On August 25, 2010, Dr. Diandepura completed a Medical Source Statement assessing Plaintiff's physical capacity to perform various tasks. (Tr. 688-89). In the form, Dr. Diandepura opined Sellers could not lift or carry any amount of weight, nor stand or walk for any length of time throughout the workday. (Tr. 688). The doctor further indicated that Sellers could only rarely or never climb, balance, stoop, crouch, kneel, crawl, reach, handle, push or pull. (Tr. 688-89). Dr. Diandepura attributed these limitations to Plaintiff's thoracic neuritis. (*Id.*).

The ALJ gave little weight to Dr. Diandepura's opinion. He explained that the doctor's findings sharply contrasted with Plaintiff's statements regarding her abilities and with all of the other evidence in the record. (Tr. 18-19). The ALJ also noted that it was unclear to him whether Dr. Diandepura had actually treated Sellers on an ongoing basis and whether the Medical Source Statement was merely completed to accommodate a request by Sellers. (*Id.*). These were all reasonable explanations of why the ALJ chose to discount Dr. Diandepura's opinion. Notably, Plaintiff did not present any arguments attacking these reasons. Consequently, Plaintiff's objection to the ALJ's analysis of this opinion is overruled. Nevertheless, because the ALJ's review of the other three treating physicians' opinions was faulty, remand is proper.

---

[4] Plaintiff incorrectly attributes the findings of Dr. Diandepura to Dr. David Ryan. (*Compare* Pl.'s Br. at 12 *and* Tr. 688-89).

11

VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case back to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: March 28, 2013.